UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LISA RUGGIERO, <br><br>        Plaintiff, <br><br>        v. <br><br> FRANK J. BISIGNANO,[1] <br> Commissioner,  Social  Security <br> Administration, <br><br>        Defendant. | No. 23-cv-12245-DLC |

MEMORANDUM AND ORDER

CABELL, U.S.M.J.

I.    INTRODUCTION

Plaintiff Lisa Ruggiero began receiving Supplemental Security Income ("SSI") in 1989, after the Social Security Administration ("SSA") found her to be disabled due to a degenerative back condition.  In 2020, some thirty years later, she applied on similar grounds for additional SSA benefits known as Disabled Child Benefits ("CDB").[2]  Her application was denied for lack of proof,

---

[1] The complaint originally named former SSA Commissioner Kilolo Kijakazi as the defendant, but Frank Bisignano became the Commissioner in May 2025 and is thus automatically substituted for Kijakazi as the defendant in this action.  Fed. R. Civ. P. 25(d).

[2] Disabled Child Benefits were previously known as Disabled Adult Child (DAC) benefits, but the SSA now refers to them as Childhood Disability Benefits, hence the "CDB" abbreviation.  CDB is income from the SSA for individuals that were determined to be disabled prior to their 22nd birthday and moreover were dependent on an individual entitled to disability insurance benefits.  42 U.S.C.

chiefly because records detailing her medical history up to 1989 had been lost.  An Administrative Law Judge ("ALJ") subsequently convened a hearing on Ruggiero's application and indicated that he would try before reaching a decision to locate the lost records, but he thereafter issued a written decision denying Ruggiero's application without commenting on what efforts if any had been made to locate the lost records.  Ruggiero moves to reverse the Commissioner's decision and to remand the matter for further proceedings.  (D. 8).  The Commissioner disagrees and seeks an order affirming his decision.  (D. 18).

This case presents a very close call.  On the one hand, the court finds no real basis to question the ALJ's conclusion that the evidence in the record did not support the plaintiff's CDB claim.  Moreover, the record reflects that there previously have been numerous attempts by others to find the missing records, and it thus would not be unreasonable to infer that the records at this point may simply be lost for good.  That said, the ALJ's failure to even mention the issue at all in his decision raises at least a question as to whether he conducted the search he signaled he would conduct.  And, because it is not known whether the records, if they exist, might benefit the plaintiff's claim, a

---

§ 402(d)(1).  The plaintiff's claim is associated with her father's account. (Tr. 267, 303).  The CDB determination in this case does not affect Ruggiero's SSI.

remand for greater clarity is appropriate. The court will accordingly grant the plaintiff's motion to reverse and deny the Commissioner's motion to affirm.

## II.   **PROCEDURAL BACKGROUND**

Ruggiero was born on August 23, 1965, and turned 22 on August 23, 1987. (Tr. 85). Following an application dated November 14, 1989, the SSA found her to be disabled based on a degenerative back condition and awarded her SSI. (Tr. 35). The file related to Ruggiero's 1989 SSI application was subsequently lost and has been missing since at least April 19, 2011. (Tr. 91).

On May 29, 2020, Ruggiero filed an application for CDB with an alleged onset date of July 31, 1983. (Tr. 195-96). In connection with the CDB application, Ruggiero claimed disability due to fibromyalgia and Lyme disease. (Tr. 271). The CDB application was denied twice, first on September 25, 2020, and then again on December 15, 2020, following Ruggiero's request for reconsideration. (Tr. 117-19, 127-29).

On June 28, 2022, an administrative law judge ("ALJ") issued a written opinion finding that Ruggiero was not entitled to CDB because she was not able to prove that she was disabled within the meaning of the Social Security Act (the "Act") prior to turning age 22 on August 23, 1987.[3] (Tr. 29-38); see 42 U.S.C. § 1382c(a).

---

[3] For some of his analysis, the ALJ stated that Ruggiero used the alleged onset date of July 31, 1983. (Tr. 31-32). This is immaterial, as his final determination was that Ruggiero "ha[d] not been under a disability, as defined

On July 31, 2023, the Appeals Council denied Ruggiero's request for review of the ALJ's decision, making the ALJ's opinion the final decision of the Commissioner for purposes of this appeal. (Tr. 1-6); *see Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Ruggiero filed a timely appeal on September 30, 2023.  (D. 1).

### III.  STATUTORY AND REGULATORY FRAMEWORK

To obtain disability benefits, a claimant must prove that she is disabled, meaning that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A claimant bears the burden of proving that she is disabled and is responsible for producing evidence to support that claim.  *Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987).

Claims for disability benefits are evaluated by an ALJ following a mandated five-step process, although the ALJ can end the inquiry at any step if he definitively finds that the claimant is not disabled.   20 C.F.R. § 404.1520 (a)(4).   For claimants applying for CDB, the ALJ must make this inquiry for the period prior to the claimant's 22nd birthday.  20 C.F.R. § 404.350(a)(5).

---

in the Social Security Act, at any time prior to August 22 [sic], 1987, the date she attained age 22."  (Tr. 37).

- 4 -

At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity."    20 C.F.R. § 404.1520(a)(4)(i).    If the claimant is engaged in substantial gainful activity, then she is not disabled.  If she is not engaged in such activity the ALJ moves on to step two.  *Id.*

At step two, the ALJ "consider[s] the medical severity of [the claimant's] impairment(s)."  20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have at least one severe medically determinable impairment or a combination of impairments that are collectively severe, or if her severe impairments are not expected to last for a continuous period of at least 12 months, then she is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii); 404.1509.[4]  If she does have such an impairment, or combination of impairments, the ALJ moves on to step three.

At step three, the ALJ determines whether one or more of the claimant's impairments "meets or equals" one of the listings in 20 C.F.R. Pt. 404, Subpt. P, App'x 1, for the required length of time. 20 C.F.R. § 404.1520(a)(4)(iii).  If an impairment, or combination of impairments, "meets or equals" a listed condition, the claimant is disabled.  *Id.*  If not, the ALJ moves on to step four.

At step four, the ALJ determines the claimant's residual functional capacity ("RFC") to do her past relevant work or any

---

[4] As discussed below, the ALJ determined Ruggiero was not disabled at step two and therefore did not proceed to the other steps.

work at all.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant has the RFC to do her previous relevant work, she is not disabled. *Id.*  If she does not, the ALJ moves on to step five to determines whether the claimant can perform other specific jobs that exist in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).   If the claimant can perform another such job, then she is not disabled. *Id.* If she cannot, then she is disabled.  *Id.*

IV.  **FACTS**

A.    **RELEVANT MEDICAL HISTORY**

None of Ruggiero's medical providers were able to locate any pertinent records dating before her alleged onset date of July 31, 1983, and the records closest in time to that date postdate her 22nd birthday (August 23, 1987) and consist of disability forms related to Ruggiero's student loans, filled out by Fred Kantrowitz, M.D. ("Dr. Kantrowitz"), and treatment notes from James Gronemeyer, a Doctor of Osteopathic Medicine ("Dr. Gronemeyer"). (Tr. 113, 566-70, 576-676).

Dr. Kantrowitz began treating Ruggiero for fibromyalgia in March of 1988.  (Tr. 566-570, 768).  On a form dated June 1, 1992, in a box titled "when did the borrower's present illness or injury start," Dr. Kantrowitz noted that Ruggiero was "initially seen in 1988" and had a five-year history of fibromyalgia and low back pain symptoms.  (Tr. 566).  In another box on the same form, and in two other documents dated February 14 and October 1, 1992,

- 6 -

respectively, Dr. Kantrowitz indicated that Ruggiero became "unable to attend work and earn money" in March 1988, after her August 1987 birthday.  (Tr. 566-69).

Dr. Gronemeyer's notes begin on January 27, 1989.  On that date, he mentioned that Ruggiero suffered pain from a motor vehicle that occurred on "March 4th", presumably March 4, 1988.  (Tr. 577). He also noted that Ruggiero began experiencing ankle swelling in 1983, discussed an event "in 1987" where Ruggiero fell and injured her wrists and knees, and noted that Ruggiero reported a headache she could feel in her "eyes, [and] frontal temple."  (Tr. 576-577).

The record also consists of the reports of those who evaluated Ruggiero's records in connection with her CDB application.  In June of 2020, John Jao, M.D. ("Dr. Jao") reviewed Ruggiero's record.  (Tr. 85-93).  Dr. Jao found for purposes of the five-step mandated review process that Ruggiero did not (at step two) have a medically determinable impairment, because there was "insufficient evidence" to establish a disability for the period between July 31, 1983, and Ruggiero's 22nd birthday.  (Tr. 92-93). Dr. Jao stated more specifically that there was "[n]o evidence to support allegations of fibromyalgia and [L]yme disease during th[at] period."  (Tr. 92).  Dr. Jao's report noted that Ruggiero's 1989 SSI file "is lost and unable to be obtained."  (Tr. 91).

In December 2020 Uma Chelvan, M.D. ("Dr. Chelvan") evaluated Ruggiero's record following Ruggiero's request for reconsideration of the denial of her claim for CDB.  (Tr. 105-15).  Dr. Chelvan similarly found that Ruggiero did not have a medically determinable impairment between July 31, 1983 and her 22nd birthday, stating that "[t]here [wa]s insufficient evidence to evaluate the claim." (Tr. 113-114).  Dr. Chelvan tried to obtain Ruggiero's medical record from her physicians but noted that "all sources prior to [the alleged onset date] w[ere] sent requests and the responses came back that no records [were] available."  (Tr. 113).

### B.    CORRESPONDENCE IN THE RECORD

Ruggiero also submitted a letter dated June 15, 2020 in support of her application.[5]  (Tr. 297-98).  Ruggiero reported she experienced her first symptoms of fibromyalgia "just before college" but pushed through the pain to graduate.  (Tr. 297).  She wrote that she had to leave her job as a senate aide in 1987, just prior to turning 22, due to debilitating "pain in [her] joints, connective tissue, muscles, and back."  (Tr. 297).  Ruggiero additionally noted that the pain she experienced in 1987 "and the eventual ramifications of being hit by a drunk driver in March of 1988 at the age of 22, which caused a spinal injury of L5S1 that

---

[5] The ALJ summarized the letter including Ruggiero's reported symptoms relative to fibromyalgia in his decision.  (Tr. 34).  As noted below, the ALJ concluded that Ruggiero's fibromyalgia caused no "more than a minimal work related limitation" prior to August 23, 1987.  (Tr. 35).

kept [her] unable to use [her] legs, made the situation that much worse." (Tr. 297).

Ruggiero, through counsel, also requested on at least three occasions that her 1989 SSI file be obtained and considered, including: (1) on November 25, 2020, while petitioning for reconsideration of the denial of the claim for CDB; (2) on February 12, 2021, in requesting an administrative hearing; and (3) on May 9, 2022, in anticipation of the scheduled administrative hearing. (Tr. 326-27, 333, 335-36, 383-85). In this last request, Ruggiero's counsel noted that the effort to locate records predating her 22nd birthday had been "challenging" because few of her treating physicians "retained records for that long." (Tr. 384).

On May 7, 2022, Ruggiero's mother wrote a letter, similar to Ruggiero's June 15, 2020 letter, which described Ruggiero's conditions. She noted various injuries that Ruggiero had sustained prior to turning 22 but specified that "slip[ping] on the stairs when she was 21 finally caused [Ruggiero's] illness to become vocationally unmanageable." Ruggiero's mother stated that Ruggiero received a fibromyalgia diagnosis "after college from Dr. Fred Kantrowitz," and her "symptoms got even worse" after she was struck by a drunk driver in March 1988. (Tr. 365-368).

C.    **THE ADMINISTRATIVE HEARING**

The ALJ convened an administrative hearing on May 16, 2022, and addressed the lost file at the outset.  He noted that he did not know "how much the bushes were beaten" or "what efforts were made" to find the file, and mused that "sometimes records get destroyed, sometimes they just haven't been found."  The ALJ noted that any records could be relevant there could be "information about earlier medical issues" that preceded the onset date.  The ALJ stated that he would "leave the record open after the hearing" because he was "inclined to go back and see" what efforts were made to secure Ruggiero's 1989 SSI file.  Ruggiero's counsel added that he had tried to obtain Ruggiero's medical records but "the physicians[,] if they haven't retired or passed away, you know, even the ones that she's continued to treat with[,] don't have records back that far."  (Tr. 47-50).

Ruggiero testified at the hearing about her background and medical history prior to turning 22.  She testified specifically about several instances throughout her childhood where she experienced health issues.  When she was around seven years-old, Ruggiero experienced pain in her right hip from an unknown source. (Tr. 52).  When she was twelve, Ruggiero fell off a horse and injured her tailbone, but the pain associated with both injuries "eventually quieted down" and "just went away."  (Tr. 52).

- 10 -

Ruggiero noted that she was "very active in sports" leading up to her high school years.  (Tr. 51).  In eighth grade, Ruggiero was put in a cast after injuring her ankle playing softball.  (Tr. 52).  No X-rays or other images were taken and "after about two months or so" the swelling went away.  (Tr. 52).  When Ruggiero was fifteen, she dislocated her coccyx.  (Tr. 52-53).  Ruggiero also testified that before she turned seventeen her friend "accidently twisted [her] wrist" which caused it to swell, requiring her to wear a brace.  (Tr. 53).  After graduating high school, while spending a weekend in the Catskills, Ruggiero experienced an ankle injury.  (Tr. 53).  According to Ruggiero, she saw specialists in relation to her ankles who could not figure out what was wrong with her outside of "kn[owing] [she] had some sort of swelling arthritic problem."  (Tr. 53).  Ruggiero further testified that was likely "when the possible tick bite happened that may have caused the fibro[myalgia]."  (Tr. 54).  Due to the swelling in her ankles, Ruggiero indicated she wore two walking casts, used crutches, and was accommodated at her work with a job that required less standing.  (Tr. 53-54).  She eventually started using a wheelchair because of her ankle swelling but stopped shortly before going to college.  (Tr. 56-57).  A "special diet" also helped reduce her inflammation.  (Tr. 57).

Ruggiero started at Skidmore College in September of 1983 and was a double major in English and Theater Arts.  (Tr. 54-56, 361).

She testified she was still bothered by ankle, wrist, and back pain while she attended Skidmore.  (Tr. 56-57).  Ruggiero received a note from her doctor modifying her work study job and allowing her to sit.  (Tr. 57-58).  Ruggiero testified that she could not play sports while at Skidmore and that she was given an accommodation by the school to do a less physically demanding senior project.  (Tr. 58-60).  Ruggiero testified that two photographs in the record with her wearing a wrist brace were taken while she was attending Skidmore.  (Tr. 60-61, 381-82).  Ruggiero stated she "got[] so bad physically" during the summer before her senior year at Skidmore that her doctor said she could no longer live off campus.  (Tr. 61-62).

Ruggiero graduated from Skidmore in May of 1987 and started working as an intern for a state senator.  (Tr. 62-63).  During the summer of 1987, towards the end of July, Ruggiero slipped while walking down a flight of stairs, "went down a couple steps on [her] ankles" and her tailbone before landing "really hard on [her] ankles with [her] shoulder and [her] wrists just twisted."  (Tr. 65).  Ruggiero stated she could barely move and was not able to return to work due to the pain and swelling associated with the injury.  (Tr. 65-66).  She also stated she could not put her sneakers on to go to the doctor because her feet were too swollen.  (Tr. 66).  At the time of the fall, Ruggiero "had done most of [the internship]."  (Tr. 68).  An article published by a local

newspaper on August 9, 1987 noted that Ruggiero was unable to complete her internship because she "suffered an injury in an accident."[6]   (Tr. 66-67, 379).   She testified that the fall exacerbated her fibromyalgia symptoms in her wrists, ankles, back, and tailbone.  (Tr. 73-74).  Ruggiero did not work in any capacity after July of 1987.   (Tr. 68).   Ruggiero also testified that, sometime after the incident in July 1987 but before March 1988, she started seeing a doctor in Brookline who diagnosed her with fibromyalgia.   (Tr. 74-76).   The doctor was located either on "Longwood Drive or Beacon Street at that time."  (Tr. 75).

In March of 1988, Ruggiero was involved in a motor vehicle accident that injured her neck and back.   (Tr. 68-69).   She underwent imaging for injuries akin to whiplash.   (Tr. 69). Ruggiero testified that the car accident exacerbated her arthritis and fibromyalgia.  (Tr. 69).  She further testified that the "car accident just made everything, you know, worse but [the pain] had gotten so much worse, you know, because of the [1987] fall."  (Tr. 80).  Relatedly, Ruggiero explained that she applied for SSI when the "delayed effects" from both the 1988 car accident and the 1987 fall left her unable to walk.  (Tr. 80-81).  In 2020, "Ms. Martinez

---

[6] The ALJ acknowledged this injury and the newspaper article in his decision but did not find the evidence to be convincing to show Ruggiero was disabled because of the fall.  (Tr. 35).  First, he noted the lack of medical records indicative of work-related limitations.  Second, he noted Dr. Kantrowitz's finding that Ruggiero's "fibromyalgia did not become disabling until March 1988."  (Tr. 35; 567).

called" Ruggiero to let her know that there was "something in some notes in [her] record" that indicated she should apply for CDB, and she did so shortly thereafter.  (Tr. 50-51).  At the hearing, the alleged onset date of Ruggiero's disability was amended from July 31, 1983, to "July of [19]87."  (Tr. 81-82).

At the close of the hearing, the ALJ forthrightly stated that "[t]he problem with the case is just a lack of information" and that he was going to "leave the record open for 30 days to sort of see if we can find any more records."  (Tr. 82).  The ALJ indicated he would "make an attempt to get the file, you know, to see if -- shake the tree at the agency to see if something will come out" and that he would decide the case once he had everything.  (Tr. 82).   The ALJ stated that Ruggiero and her counsel would be notified if he found any records that could be added to Ruggiero's file.[7]  (Tr. 83).  The ALJ further noted that if they were able to find additional records and "things change," he "may have a supplemental hearing."  (Tr. 83).  No vocational testimony was taken in the hearing.  (Tr. 82).

D.   **THE ALJ'S FINDINGS**

On June 28, 2022, the ALJ issued a decision denying Ruggiero's application on the ground that she had not been under a disability prior to her 22nd birthday.  (Tr. 29).  In so finding, the record

_____

[7] The transcript misattributes this statement to Ruggiero's attorney.

does not reflect one way or the other whether the ALJ searched for or made any inquiries regarding the lost file following the administrative hearing, although it is clear that the ALJ did not convene a supplemental hearing.

The ALJ's review was fairly truncated here given the information before him. The ALJ found at step one that Ruggiero had not engaged in substantial gainful activity since July 31, 1983, but found at step two that she was not suffering from a severe medical impairment or combination of impairments during the relevant period, and thus was not disabled within the meaning of the Social Security Act.

In determining that the plaintiff was not suffering from a severe medical impairment, the ALJ first considered the impairments the plaintiff testified to, including her fatigue, swollen ankles, fractured coccyx or tailbone, wrist pain, Lyme disease, and chronic benzodiazepine use. (Tr. 32-33). The ALJ found none of these impairments was medically determinable, noting that medical and psychological impairments need to be established by "medical evidence consisting of signs symptoms and laboratory findings, not only the claimant's statement of symptoms." (Tr. 32-33).[8] Unsurprisingly given the loss of the 1989 file, the ALJ

---

[8] Pertinent to the above, a medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques" and therefore "must be established by objective medical evidence from an acceptable medical source. [The ALJ] will not use [the claimant's] statement of symptoms,

found no record of Ruggiero testing positive for Lyme disease prior to August 22, 1987,[9] and similarly found no medical evidence in the record (outside of subjective statements of the plaintiff and her supporters) to support Ruggiero's allegations of fatigue, chronic benzodiazepine use, spine, ankle, wrist, and tailbone impairments before she turned 22.  The ALJ acknowledged the plaintiff and others offered subjective statements supporting these conditions but found that these allegations alone were not enough to establish the conditions as medically determinable.  (Tr. 32-33); *see* 20 C.F.R. § 404.1521.

By contrast, the ALJ found the plaintiff's claimed impairments of fibromyalgia and migraines to be medically determinable because "[Dr. Gronemeyer's] progress notes in 1988, Dr. Kantrowitz's statements, and record as a whole" reflected a finding that Ruggiero's migraines and fibromyalgia were medically determinable prior to her 22nd birthday.  (Tr. 37) (citing Tr. 566, 576, 768).

The ALJ then considered whether those impairments would have significantly limited Ruggiero's ability to perform basic work prior to her 22nd birthday.  (Tr. 33); *see* 20 C.F.R. § 404.1522(a)

---

a diagnosis, or a medical opinion to establish the existence of [the claimant's] impairment(s)."  20 C.F.R. § 404.1521.

[9] The ALJ incorrectly noted several times in his decision that Ruggiero's 22nd birthday was August 22 instead of August 23, 1987.  (Tr. 32-37).  This one-day difference is of no consequence.

("[A]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The ALJ found Ruggiero's statements regarding "the intensity, persistence and limiting effects" of her fibromyalgia and migraine symptoms "[were] not entirely consistent." (Tr. 34). As such, the ALJ determined there was insufficient evidence to support that either Ruggiero's fibromyalgia or her migraines caused more than minimal work-related limitations prior to her 22nd birthday.[10] (Tr. 35-36).

Specific to Ruggiero's fibromyalgia, the ALJ found that the record contained no evidence of "at least 11 out of 18 total tender-points by an acceptable medical source" to indicate Ruggiero's fibromyalgia was disabling prior to her 22nd birthday.[11] (Tr. 35). The ALJ further noted that the record did not "consistently show six or more constitutional symptoms closely correlated to fibromyalgia, such as, fatigue, cognitive or memory

---

[10] Specific to migraines, the ALJ found no evidence in the record showing that migraines caused "dizziness, nausea, photophobia, or sound sensitivity" that would significantly limit Ruggiero's ability to perform basic work. (Tr. 36). The lack of evidence combined with the fact Ruggiero was a "full-time college student from 1983-1987 in addition to the summer jobs and/or work study she held" led the ALJ to find that the migraines did not constitute a severe medical impairment. (Tr. 36).

[11] *See* SSR 12-2p, 77 Fed. Reg. 143, at 43641-42 (July 25, 2012) (describing "The 1990 [American College of Rheumatology] Criteria for the Classification of Fibromyalgia," which is one of two sets of criteria the SSA uses to find if a claimant has a medically determinable impairment of fibromyalgia by determining "if he or she has all three of the following: . . . [a] history of widespread pain[,] . . . [a]t least 11 positive tender points on physical examination[,] . . . [and] [e]vidence that other disorders that could cause the symptoms or signs were excluded"). The ALJ cited SSR 12-2p in his decision. (Tr. 34).

impairment, dizziness, anxiety disorder, or depression during the period at issue."[12]   (Tr. 35).   The ALJ pointed out that, while Ruggiero did report pain throughout her body, there was "little to no evidence that other disorders that could cause the same symptoms or signs were excluded," which the ALJ found noteworthy given Ruggiero's history of acute injuries causing pain symptoms.   (Tr. 35); *see* SSR 12-2p, 77 Fed. Reg. at 43641-42.   The ALJ also noted that there were statements from Ruggiero's treating physician, Dr. Kantrowitz, indicating Ruggiero's fibromyalgia "did not become disabling until March 1988," that is, after her alleged onset date of disability.   (Tr. 35).   The ALJ found these statements to be persuasive in determining Ruggiero's fibromyalgia "caused no more than a minimal work-related limitation prior to August 22, 1987" as they were "somewhat supported by contemporaneous progress notes and the claimant's spinal injuries from her motor vehicle accident."   (Tr. 37).   The ALJ further indicated there were "no medical records showing abnormalities on physical examinations to support work related limitations" as a result of the 1987 incident where Ruggiero fell down the stairs.   (Tr. 35).

---

[12] *See* SSR 12-2p, 77 Fed. Reg. at 43642 (describing "The 2010 [American College of Rheumatology] Preliminary Diagnostic Criteria" which is the second of two sets of criteria the SSA uses to find if a claimant has a medically determinable impairment of fibromyalgia by determining if the claimant "has all three of the following criteria: . . . [a] history of widespread pain[,] . . . [r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions[,] . . . [and] [e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded")

The ALJ also considered the findings of both Dr. Jao and Dr. Chelvan and concluded they were consistent with the record as a whole.  (Tr. 36).  Of note, the ALJ noted that Dr. Chelvan had asked Ruggiero's physicians for additional records and had been told that no additional records were available.  (Tr. 36).

The ALJ accordingly found on the record before him that Ruggiero was not suffering from a severe medical impairment or combination of impairments during the relevant period, and for that reason correspondingly found that she was not disabled prior to her 22nd birthday.  (Tr. 36).

## V.   STANDARD OF REVIEW

The court has the power to affirm, modify, or reverse a decision made by the Commissioner. 42 U.S.C. § 405(g).  Generally, the court reviews findings of the Commissioner only to determine if the Commissioner's decision is based on the correct legal standard and is supported by substantial evidence.  *See Teague v. Colvin*, 151 F. Supp. 3d 223, 226 (D. Mass. 2015).  Substantial evidence is "more than a mere scintilla[,] [i]t means such relevant evidence as a reasonable mind might accept as adequate to support [the Commissioner's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Roman-Roman v. Comm'r of Soc. Sec.*, 114 F. App'x 410, 411 (1st Cir. 2004) (per curiam) (holding decision is supported by substantial evidence if there is

- 19 -

"evidence rationally adequate on the record as a whole to justify the [Commissioner's] conclusion").

## VI.  DISCUSSION

Under 20 C.F.R. § 404.900(b), the SSA conducts "the administrative review process in an informal, non-adversarial manner."  Because of this non-adversarial review, it is the ALJ's duty to develop the record.  *Sims v. Apfel*, 530 U.S. 103, 104 (2000).  If there is insufficient evidence to determine whether a claimant has a disability, the ALJ may recontact the claimant's medical sources, request additional existing evidence, ask the claimant to undergo a consultative examination, or ask the claimant or others for more information.  20 C.F.R. § 404.1520b(b)(2) (noting the action taken will "depend on the nature of the . . . insufficiency").  If "despite efforts to obtain additional evidence, the evidence is insufficient to determine whether [the claimant] is disabled, [the ALJ] will make a determination or decision based on the evidence [he] has."  20 C.F.R. § 404.1520b(b)(3).  When an ALJ does not fully develop the factual record, the ALJ commits legal error, and a remand may be appropriate.  *See e.g., Tegan S. v. Saul*, 546 F. Supp. 3d 162, 171 (D.R.I. 2021) (holding that remand was required because ALJ erred in not exercising duty to develop the record pursuant to 20 C.F.R. § 404.1520b(b)(2) when faced with insufficient evidence to decide

- 20 -

whether claimant's fibromyalgia was a medically determinable impairment).

The Commissioner argues that the ALJ reached a sound determination based on the evidence before him, but the critical issue is whether the ALJ properly developed the record before making that determination. Ruggiero contends that the ALJ failed to adequately develop the record by not locating and considering her 1989 records. Again, due to the "inquisitorial rather than adversarial" nature of Social Security proceedings, an ALJ has a duty "to investigate the facts and develop the arguments both for and against granting benefits," *see Sims*, 530 U.S. at 110-11, and to "consider all evidence *available*" in the case record. 42 U.S.C. § 423(d)(5)(B) (emphasis added).

As noted above, the ALJ unquestionably acknowledged at the administrative hearing that potentially relevant records were missing, and he indicated he would "make an attempt to get the file, you know, to see if --shake the tree at the agency to see if something will come out," and then decide the case or maybe even convene further proceedings. It is also clear that the ALJ then proceeded to render a decision without mentioning whether any efforts had been made to locate the missing information.

It arguably would not be unreasonable to infer that the ALJ did cause a search to be made for the lost records and that the search simply turned up nothing new. After all, the ALJ signaled

he might convene further proceedings if additional information was located, and the fact that he ruled without doing so could be seen as consistent with his proceeding to rule after having conducted an unfruitful search.  At the same time, though, it is somewhat curious and concerning given its potential significance that the ALJ did not at least mention the lost records issue and what if anything happened following the administrative hearing.  This at least raises the possibility that the ALJ may have simply forgotten to make an inquiry into the missing records, or for some other reason chose not to do so.  Whatever the reason, it leaves the court unable to readily agree that the ALJ made the requisite "reasonable effort" to affirmatively develop the record and obtain missing information that he was aware was not in the record.  See 20 C.F.R. § 404.1512(b) (stating that the Social Security Administration agency must make "every reasonable effort" to obtain all medical evidence including an initial request for records and a follow-up request within ten to twenty days if records are not received).

The ALJ's decision itself tends to underscore that the failure to try and obtain these records (assuming there was a failure) was not harmless where the decision to deny the plaintiff's claim is based ultimately on the plaintiff's failure to marshal enough supportive evidence, including in particular medical treatment notes during the critical 1987-1998 time-period.  *See Viega v.*

*Colvin*, 5 F. Supp. 3d 169, 176-77 (D. Mass. 2014).  Assuming such records exist, it is at least plausible that they might have provided some support for the plaintiff's claim.  A remand is thus warranted to determine whether the ALJ made a reasonable effort to develop the record before deciding the plaintiff's application.

Without deigning to dictate the mechanics of any proceedings that should follow on remand, the court presumes that if reasonable efforts were not made following the administrative hearing to locate the missing records, they will now be made.  However, should the ALJ indicate that he did make a reasonable but ultimately unsuccessful effort to locate the missing records, the determination in this case might well remain unchanged.  *See* 20 C.F.R. § 404.1520b(b)(3) (If "despite efforts to obtain additional evidence, the evidence is insufficient to determine whether [the claimant] is disabled, [the ALJ] will make a determination or decision based on the evidence [he] has.").  In this regard, the court takes no position on the plaintiff's contention that the "obvious gap in the medical record" would "require[] further development of the record," including possibly consultation with a medical expert to determine disability onset.

## VII.  <u>CONCLUSION</u>

For the foregoing reasons, the plaintiff's motion to reverse the Commissioner's decision (D. 8) is **GRANTED** and the Commissioner's motion to affirm the decision (D. 18) is **DENIED**. The matter is remanded to the Commissioner for further proceedings consistent with this opinion.

<u>/s/ Donald L. Cabell</u>
DONALD L. CABELL, U.S.M.J.

DATED:  March 31, 2026